(No. 2448. Feb. 2, 1920.)

## STATE v. ALLEN

### SYLLABUS BY THE COURT

Where motive is sought to be shown circumstantially, the circumstances shown must bear such relation to the facts as to be capable of creating the given state of mind of the defendant which is sought to be established. If they could not operate upon the mind of the defendant, they lack relevancy and are inadmissible.

Appeal from District Court, Union County; Leib, Judge.

Edgar Allen was convicted of murder in the first degree, and he appeals. Reversed and remanded, with directions.

O. P. EASTERWOOD, of Clayton, for appellant.

O. O. ASKREN, Atty. Gen., for the State.

### OPINION OF THE COURT

PARKER, C. J. Defendant was tried and convicted of murder in the first degree. The facts were that Louis Moore, the deceased, and Caroline Moore, his wife, and mother of the defendant, lived on a farm about four miles south and east of Grenville, Union county, N. M., and that the defendant, who was then living at Duncan, Okla., on the invitation of the deceased, came out to New Mexico about 10 days before the death of the deceased for the purpose of assisting him with his crops; that the defendant worked on different farms until the deceased could get ready to thresh his crop; that on the morning of the homicide the defendant and the deceased went out to fix a fence and drive up some mules; that as the defendant started out that morning he took an old shotgun, having no guard over the trigger, and with it killed two rabbits which he hung along the fence that he and the deceased were to fix; that, according to defendant's testimony, the only eyewitness, after the defendant had found the place in the fence which was to be fixed, and after he had killed the two rabbits, the deceased rode up on a horse, from which he dismounted and commenced fixing the fence; that the horse started to walk away, and the defendant got the horse, and while leading him back, and on account of the horse jerking, the gun was caught in some way in the defendant's clothing and went off and shot the deceased in the back of the head and neck; that the defendant immediately

ran over to the deceased, pulled him away from the fence, got on the horse, and went by his mother's place and on to Grenville for a doctor, after first stopping and reporting the accident to two or three neighbors and getting their advice as to the best thing to do.

While the defendant was at Grenville endeavoring to secure the services of a physician, he was arrested, and there were threats to burn and lynch him. The defendant was taken back to the scene of the homicide, and in the presence of various onlookers was compelled to demonstrate just how the shooting had taken place. At the time the defendant was arested, he had about $13 which he had made working for some neighbors. After the coroner's inquest, the person of the deceased was searched, and a check for $240 and some money was found on his person.

Upon trial, over the objections of the defendant, the witness Ogilvie was permitted to testify that the deceased had applied for a farm loan a short time before his death, and as to whether such loan had been allowed and a check issued therefor, and where such check was at the time of Moore's death. The witness Caroline Moore, over the objections of the defendant, was likewise permitted to testify in regard to this loan from the Federal Farm Loan Bank, and as to whether she and her husband were expecting the check or money in a day or two.

This evidence was offered by the prosecution for the purpose, evidently, of showing motive on the part of the defendant in killing the deceased, and for the purpose of showing that the homicide was committed for the purposes of robbery. Neither prior to the introduction of this evidence, nor subsequently, did the prosecution attempt to show that the defendant had any knowledge or information of any kind of the fact of the application for the farm loan, or the probable receipt of the

State v. Allen, 25 N. M. 682.

proceeds thereof within a short time thereafter, or that he could have had knowledge of the same, further than to show that he lived at the home of the deceased.

The inference that defendant knew of the loan by reason of his residence at the home of the deceased would seem to be entirely overcome and destroyed by other direct evidence for the prosecution. It appears that application for the loan had been made some considerable time previous, and neither deceased nor his wife had any information as to when the proceeds might be received. As a matter of fact, the loan had been made and the check for the proceeds had been received by the agent of the Farm Loan Bank; but he had not advised deceased or his wife of the fact.

Defendant had been in the country only ten days, most of which time he spent away from the house of the deceased, and the wife of the deceased testified for the state that the subject of the loan was never mentioned between her and her husband when the defendant was present.

It thus appears that the defendant had no direct knowledge, even of the application for the loan, much less of its allowance by the bank. He could not have had knowledge of the allowance of any such loan, because neither the deceased nor his wife had any information as to when the proceeds of the loan might be expected, nor did they know that the check had arrived and was in hands of the agent of the bank for delivery.

We are not unmindful of the principle that motive, like any other fact, may be shown circumsantially, in fact is most often so shown. Great latitude must necessarily be allowable in the admission of circumstances, collateral to the main issue, to show the state of mind of a defendant when he acted. But in all such cases the circumstances shown must be so related to the transaction as to be

Albuq. & C. C. Co., v. Lermuseaux, 25 N. M. 686.

capable of creating the given state of mind. If the circumstances shown are of such a character that they could not have operated upon the mind of the defendant, as in this case, they lack relevancy and are inadmissible.

In this case the facts shown were highly prejudicial to the defendant, and their admission in evidence requires a reversal of the judgment.

It follows that the judgment of the lower court should be reversed, and the cause remanded, with directions to award a new trial, and

It is so ordered.

ROBERTS and RAYNOLDS, J.J., concur.